**LLOYD'S, U.S.
CORPORATION, Appellant,**

v.

**Joseph F. LANDIS, Appellee.**

No. 08–89–00128–CV.

Court of Appeals of Texas,
El Paso.

Aug. 30, 1989.
Rehearing Denied Sept. 27, 1989.

W. Michael Bonesio, Walter S. Cowger, Susan B. Greenberg, Akin, Gump, Strauss, Hauer & Feld, Dallas, for appellant.

Michael R. Cooper, Dallas, for appellee.

Before FULLER, WOODARD and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

This is an appeal from a reformed judgment awarding declaratory and injunctive relief but denying all monetary relief, including actual and exemplary damages and attorneys' fees. We affirm.

Lloyd's, U.S. Corporation ("Lloyd's"), Appellant herein, is the attorney-in-fact for the underwriters of Lloyd's, U.S., a Texas Lloyd's Plan Insurer. Intercon Reinsurance Brokers Limited ("Intercon"), a company wholly owned and operated by Joseph F. Landis ("Landis"), Appellee herein, entered into a managing agreement with Lloyd's on July 1, 1987, by the terms of which Lloyd's gave Intercon authority to act as its managing general agent in Texas "to appoint sub-agents and receive and accept proposals limited to insurance covering certain classes of risk" in the automobile insurance field. Landis then proceeded in Lloyd's name to enter into managing agency agreements with six "general insurance agencies," which in turn appointed approximately 275 local recording agents. All of the insurance written under these agreements was to be one hundred percent reinsured by Intercon. A great number of unauthorized automobile policies were sold in Texas under these agreements. Within a month or so, Lloyd's learned that Intercon was not licensed by the Texas State Board of Insurance as a managing general agent, as required by law and as had been represented to Lloyd's, and had not presented proper reinsurance to Lloyd's. Lloyd's then sent letters to Intercon and all known managing general agents notifying them that the managing agreements entered into by Intercon on Lloyd's behalf were invalid, null and void and were being terminated effective immediately. Lloyd's also notified all known holders of unauthorized insurance policies that their policies were void. Shortly thereafter, this suit was filed by Intercon and four of the general agents against Lloyd's for breach of contract and other causes of action.

Lloyd's First Amended Answer contained a general denial, a counterclaim against Intercon and the general agents for declaratory relief, money damages and attorney's fees, and a third-party claim against the individual owners of the same general agencies which were original plaintiffs in the suit and against Landis, who was named in the suit for the first time, for injunctive relief and for an accounting. The counterclaim and third-party claim will be considered in more detail below.

A great amount of discovery was attempted by Lloyd's against Intercon and Landis with very little success, Landis failing or refusing to cooperate and comply with nearly all such discovery efforts. Several motions to compel and for sanctions were heard by the trial court. Finally, after motion and hearing resulting in a finding that Landis and Intercon had abused the discovery process, the court, on January 28, 1988, ordered that the petition of Intercon and the answer of Landis to Lloyd's counterclaim both be stricken, that a default judgment in favor of Lloyd's and against Landis and Intercon be entered, and that a hearing to determine the amount of damages be set for February 8, 1988. About the same time, at Landis' and Intercon's request, their then attorney was allowed to withdraw.

On February 8, Landis filed a Motion for Continuance on the damages hearing, primarily for the reason that his previous attorney had withdrawn and his new attorney would only agree to take the case if he could get all of the records from the prior attorney and if the damages hearing was postponed. The motion was denied and the court proceeded to hear testimony on damages and attorney's fees. Neither Landis nor his attorney appeared in person at the hearing. The court allowed Lloyd's a trial amendment to its third-party claim "to conform [the pleadings] to the evidence ...," and to include a prayer for actual and punitive money damages against Landis individually "for his fraudulent misrepresentations and actions" and against Intercon. Judgment was rendered and signed by the judge on February 10, 1988, granting

Lloyd's all of the declaratory and injunctive relief requested and, in addition, awarding Lloyd's $2,672,161.00 in actual and exemplary damages and $560,516.86 attorney's fees against Landis and Intercon, jointly and severally. On March 10, 1988, Landis and Intercon filed a motion to reform the judgment, or in the alternative to grant a new trial, primarily on the grounds that the judgment was not supported by the pleadings in that Lloyd's First Amended Answer did not contain a cause of action or prayer for monetary damages against Landis. Following a hearing on this motion, the trial judge reformed the judgment to eliminate entirely the award of damages and attorney's fees against Landis. It is from the reformed judgment that Lloyd's brings this appeal. It should be noted that prior to perfection of the appeal, all claims by or against Lloyd's, except its claims against Landis, had been dismissed or non-suited, so that Lloyd's and Landis are the only parties remaining in this suit.

In its first point of error, Lloyd's asserts that the trial court erred in reforming the judgment since it had sufficiently pleaded its entitlement to recover actual and exemplary damages and attorney's fees from Landis and since Landis had actual notice of the claims for monetary damages against him. It would be instructive at this time to review the Lloyd's pleadings on which it went to trial. The counterclaim, in Paragraphs II and III, pled actions for damages and for declaratory and injunctive relief against Intercon and four general insurance agencies. Landis' name is not mentioned in the counterclaim. Paragraph IV of the pleading, which sets up the third-party action, in relevant part reads as follows:

> *Third–Party Action Against*
>
> *Carrell General Agency, Sidney Ginsberg d/b/a State Wide Insurance Agency, Dale St. John, Individually and d/b/a Surplus Marketing General Agency, Nanett St. John, Individually and d/b/a Surplus Marketing General Agency, Linda P. Beber, Individually and d/b/a Insuror–Dyne Southwest, Charles C. Beber, Individually and d/b/a Insuror–Dyne Southwest, John*

> *K. Jones, Individually and d/b/a Redbird General Insurance Agency, Helen Jones, Individually and d/b/a Redbird General Insurance Agency, and Joseph F. Landis, Individually.*

16. Lloyd's U.S. hereby adopts the entire counterclaim as set forth above against Linda and Charles Beber a/k/a Insuror–Dyne Southwest a/k/a IDS a/k/a Linda P. Beber, Managing General Agency ("Beber"), Carrell General Agency, Red Bird General Insurance Agency, Counter–Defendant Surplus Marketing General Agency ("Surplus Marketing"), the assumed name business of Dale and Nanett St. John, and Red Bird General Insurance Agency [sic], and incorporate the same by reference as if fully set forth at length herein.

\* \* \* \* \* \*

28. Joseph Landis is an individual residing at all times material herein in the state of Texas. He may be served with process herein by serving him at 4:30 o'clock p.m. on November 6, 1987, in the 298th Judicial District Court of Dallas County, Texas.

Paragaph V sets out Lloyd's request for injunctive relief against the counter-defendants and third-party defendants. Paragraph VI follows with a request for an accounting from these parties for all of their activities and policies written as purported agents of Lloyd's. In its prayer for relief, Lloyd's asks for a restraining order and temporary and permanent injunctions against the third-party defendants, including Landis, for an order requiring the third-party defendants to furnish it with copies of all policies and papers and an accounting of premiums. Other than its incorporation by reference of its counterclaim in which Landis' name is not mentioned, neither the body of the third-party pleadings nor the prayer for relief allude to a claim for damages against Landis or any of the other third-party defendants. In the counterclaim itself, the only mention of damages and attorney's fees is in the prayer and the only discernible allusion to a cause of action that could give rise to relief by way of damages are several general references to

Lloyd's having been induced to enter into the managing agreement by fraudulent misrepresentations by Intercon.

Lloyd's claims that its pleadings were sufficient to support a claim for damages, but if they were insufficient, the error or omission was cured by the trial amendment. Furthermore, Lloyd's alleges that Landis had sufficient and adequate notice of the claims for both damages and attorney's fees, and that if he believed the pleadings to be insufficient, he should have filed special exceptions requesting clarification.

■ The Texas Rules of Civil Procedure require that pleadings in the district court are to consist of a statement in plain and concise language of the cause of action, sufficient to give fair notice of the claim involved, and in a claim for unliquidated damages, only a statement that the damages sought exceed the minimum jurisdictional limits of the court. Tex.R.Civ.P. 45 and 47. In determining whether the pleadings are sufficient to give fair notice "[t]he test should be whether an opposing attorney of reasonable competence, with the pleadings before him, can ascertain the nature and the basic issues of the controversy and the testimony probably relevant." 2 R. McDonald, Texas Civil Practice sec. 5.05 (rev.1982). *Davis v. Quality Pest Control,* 641 S.W.2d 324 (Tex.App.— Houston [14th Dist.] 1982, writ ref'd n.r.e.); *Rodriguez v. Yenawine,* 556 S.W.2d 410 (Tex.Civ.App.—Austin 1977, no writ). To be sufficient, pleadings should give fair and adequate notice of the facts upon which the pleader relies in order that the adversary can properly prepare his defense. *Murray v. O & A Express, Inc.,* 630 S.W.2d 633 (Tex.1982); *Stone v. Lawyers Title Insurance Corporation,* 554 S.W.2d 183 (Tex.1977). In the absence of special exceptions, pleadings are to be liberally construed. *Id.* Where there is a question of whether a cause of action has been stated, the court will look to the intentions of the pleader and uphold the pleadings and the judgment rendered thereon even if some element of a cause of action has not been alleged specifically. *Roark v. Allen,* 633 S.W.2d 804 (Tex.1982).

■ In the case of default judgment, such as the first judgment in this case, fair notice requires that the pleadings be able to stand on their own in stating a cause of action. *Fairdale Limited v. Sellers,* 651 S.W.2d 725 (Tex.1982). In *Fairdale,* the Court said at 725:

A default judgment must be supported by a petition which states a cause of action. *Griswold v. Carlson,* 151 Tex. 246, 249 S.W.2d 58 (1952). In determining if a cause of action has been pleaded, the court must be able to determine from the pleadings alone the elements of the cause of action and the relief sought with reasonable certainty and without resorting to other sources. The purpose of this rule is to provide fair notice to the defendant of the basis of a plaintiff's cause of action. *Stoner v. Thompson,* 578 S.W.2d 679 (Tex.1979).

A reading of Lloyd's counterclaim and third-party claim, the relevant portions of which have been previously set forth, fails to reveal an intelligible cause of action alleged against Landis for damages on any theory. Although we are not called upon to decide it, it is questionable whether the allegations and prayer in Lloyd's counterclaim would have been sufficient to support a judgment for damages against the named counter-defendants, including Intercon.

■ Lloyd's argues strenuously that "(n)ot only did Landis have fair notice from the face of the pleading that Lloyd's, U.S. had a claim for damages against him, Landis and his counsel actually *knew* such a claim was pending against him...." This statement is based on the reference in Landis' Motion for Continuance to the "hearing for February 8, 1988, with regard to damages[,]" and testimony of Landis' former attorney that he was aware and had so advised Landis that Landis faced a large damage award if a default was entered against him. Even if one assumes that Landis, at least in his own mind and in the mind of his attorney, thought that Lloyd's, by virtue of its pleadings, was seeking money damages against Landis, that fact

would not cure the failure to state a cause of action. Thus, the rule as stated in *Fairdale Limited v. Sellers*, 651 S.W.2d 725, that the court must look to the pleadings alone, without resort to other sources, to determine whether or not they sufficiently state a cause of action. A cursory reading of the cases cited by Lloyd's in support of its argument ·indicates, in each case, a readily identifiable cause of action with only some of the details lacking, a problem easily cured, if necessary, by special exception. In this case, other than the stated causes of action for injunctive relief and an accounting, there was nothing related to damages to which Landis could or should have specially excepted.

■■■ Lloyd's next contends that the trial court properly allowed Lloyd's to file its trial amendment which cured the pleading problem, if any. We disagree. This is a default situation resulting from the answer having been struck by the court because of abuse of the discovery process. It differs in some respects from a post-answer and no-answer default, but as in the case of all defaults, a default judgment only admits facts which were properly alleged. *Stoner v. Thompson*, 578 S.W.2d at 684. A trial amendment cannot be utilized in a default hearing to create a cause of action not previously pled. *Id.* at 684. Nor can it be argued that Landis impliedly consented to the trial amendment or the hearing on damages by voluntarily absenting himself from that hearing. As stated in *Stoner* at 685: "[A]n absent party will not be considered to have tried an unpled cause of action by implied consent under Rule 67 where fair notice of that cause of action is not in the pleadings."

Lloyd's first point of error is overruled.

In its second point, Lloyd's asserts that the trial court erred in reforming the first judgment since there was sufficient evidence heard by the court to support an award of actual and exemplary damages and attorney's fees. The second point of error has become moot as a result of our ruling on the first point and is, therefore, also overruled.

In two cross-points, Landis claims first, that the reformed judgment is not appealable since it is not a final judgment, and second, the judgment having been reformed by the trial court in the exercise of its plenary powers, it should be reviewed on appeal under an "abuse of discretion" standard.

Under his first cross-point, Landis asserts that the causes of action, by or against certain plaintiffs, counter-defendants and cross-defendants, have never been non-suited or otherwise disposed of and thus, the judgment in question is not a final appealable one. Our review of the record, including the supplemental transcript, reveals that all of the parties and claims mentioned in Landis' brief have been either non-suited, dismissed or severed, or an interlocutory default judgment taken against them, in which latter case the judgment was made "final" in the final judgment and confirmed in the reformed judgment. Landis' first cross-point is overruled.

■■■ Landis' second cross-point is without merit since the trial court was obligated to reform the judgment as a matter of law upon proper motion, the trial amendment having been improperly allowed and the original relief having been granted without support in the pleadings otherwise then on file. We overrule the second cross-point.

The reformed judgment of the trial court is affirmed.